177 N.J. Super. 186 (1981)
425 A.2d 1091
JOHN J. DEGNAN, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NORDMARK & HOOD PRESENTATIONS, INC., A GEORGIA CORPORATION, JAMES NORDMARK, INDIVIDUALLY AND AS DIRECTOR OF NORDMARK & HOOD PRESENTATIONS, INC., AND ROBERT SHERIDAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1981.
Decided January 30, 1981.
*188 Before Judges BISCHOFF, MILMED and FRANCIS.
Bruce H. Snyder, Deputy Attorney General, argued the cause for the appellant (John J. Degnan, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
Stanley S. Spector argued the cause for the respondents (Blaine P. Friedlander pro hac vice on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
This appeal involves the applicability of the Charitable Fund Raising Act of 1971 (hereinafter referred to as the Act) N.J.S.A. 45:17A-1 et seq. Specifically the issue before us is whether defendants fall within the definition of a professional fund raiser which is defined in the Act as follows:

N.J.S.A. 45:17A-3. Definitions.
* * * * * * * *
(c) "Professional fund raiser." Any person who for compensation or other consideration plans, conducts, manages, or carries on any drive or campaign in this State for the purpose of soliciting contributions for or on behalf of any *189 charitable organization or any other person, or who engages in the business of, or holds himself out to persons in this State as independently engaged in the business of soliciting contributions for such purpose. A bona fide officer or employee of a charitable organization shall not be deemed a professional fund raiser.
Also of significance is the definition of a professional solicitor.

N.J.S.A. 45:17A-3(d).
(d) "Professional solicitor." Any person who is employed or retained for compensation by a professional fund raiser to solicit contributions for charitable purposes from persons in this State.
The facts are undisputed. Defendant Nordmark & Hood Presentations, Inc. is a Georgia for-profit corporation. It is not registered with the New Jersey Charities Registration and Investigation Section (hereinafter C.R.S.) within the Division of Consumer Affairs (N.J.S.A. 45:17A-8; N.J.A.C. 13:48-1.1). On or about July 18, 1978 defendants entered into a contract to produce a circus and to solicit contributions on behalf of the Kiwanis Club of Morristown, New Jersey, (Kiwanis). At that time Kiwanis was not registered with C.R.S. (N.J.S.A. 45:17A-4). Defendants solicited nearly $11,000 in gross receipts, of which Kiwanis received less than 15% or approximately $1,500. In August of the following year the parties entered into a similar contract and as before, neither party submitted the contract to the C.R.S. nor did they register with the C.R.S.
On February 7, 1979 the C.R.S. learned for the first time of defendants' activities when the Jersey Shore Exchange Club (Exchange Club), a registered charity, submitted an alleged producer's contract with defendants to C.R.S. Under the terms of the contract the defendants agreed to put on a circus for the Exchange Club for costs plus 50% of the profit. This agreement was not submitted to C.R.S. until ten months after the event. The contracts between defendants and the Kiwanis and the Exchange Club were similar.
On February 22, 1979 Franklin N. Swenson, chief of the C.R.S., notified the Exchange Club by letter that the proposed arrangements were illegal because they involved the use of an *190 unregistered professional fund raiser and provided for compensation beyond the amount permitted by statute. N.J.S.A. 45:17A-10. That statute limits the amount a charitable organization can pay a professional fund raiser or professional solicitor to 15% (including reimbursement for expenses incurred) of the amount raised or received. While a hearing was offered by Swenson to challenge this interpretation by C.R.S. neither party requested it.
Thereafter the defendants proposed to use the name of the Exchange Club and sell circus tickets in exchange for a share of the profits. C.R.S. informed defendants it would be acting in violation of the Act if it did so, since it would be acting as an unregistered professional fund raiser and would be receiving compensation in excess of that allowed by statute. N.J.S.A. 45:17A-10. The chief of C.R.S. directed the parties to cease solicitation. N.J.S.A. 45:17A-12. No appeal was taken from that agency action though the tickets were sold, the show put on and profits received and distributed.
In June 1979 defendants contacted Kiwanis and proposed to put on a circus under a similar arrangement. C.R.S. objected but permitted the show to proceed under certain conditions including the registration of defendants with C.R.S. and the establishment of an escrow for all receipts. The show was put on and the moneys received were distributed in violation of the agreed conditions.
Plaintiff filed the instant action in the Chancery Division pursuant to N.J.S.A. 45:17A-14 seeking temporary and permanent injunctive relief together with an order of restitution to the Exchange Club and to Kiwanis of all money illegally retained by defendants. The trial judge denied all relief because he concluded defendants' activities did not fall within the intendment of the Act. He entered a summary judgment dismissing plaintiff's action and plaintiff appeals.
*191 Preliminarily we dispose of a procedural irregularity. Plaintiff contends that defendants should have been precluded from raising their defenses collaterally at the trial level because they failed to appeal the declaratory ruling from the C.R.S. The chief of the C.R.S. had ruled that the proposed arrangements with the Exchange Club whereby defendants would use the charitable organization's name in return for a share of the proceeds was illegal. C.R.S. held the arrangements involved the use of an unregistered professional fund raiser in violation of N.J.S.A. 45:17A-8 and provided for compensation in excess of 15% of the moneys raised as limited by N.J.S.A. 45:17A-10.
We agree that the trial court should not have allowed defendants to present their case collaterally. Generally, declaratory rulings as described by the Legislature under N.J.S.A. 52:14B-8
... shall bind the agency and all parties to the proceedings on the state of facts alleged. Full opportunity for hearing shall be afforded to the interested parties. Such ruling shall be deemed a final decision or action subject to review in the Appellate Division of the Superior Court.
It is well settled that the right to a review of a final administrative decision of a state agency is vested exclusively in the Appellate Division. R. 2:2-3(a)(2); Doe v. State, 165 N.J. Super. 392 (App.Div. 1979). "Normally, attempts to question or attack collaterally prior decisions of an administrative agency are rejected by the courts except on grounds that the agency lacked jurisdiction over the subject-matter or the person." State v. Wenof, 102 N.J. Super. 370, 374 (Cty.Ct. 1968). If defendants wished to challenge the agency's action the proper approach was by way of appeal to this court. However, since the matter is now before us we will hear it as if it had been brought to us by way of appeal. R. 2:2-3(a). Delaney v. Penza, et al, 151 N.J. Super. 455, 459 (App.Div. 1977).
Defendants first contend that since the declaratory ruling by the chief of C.R.S. was rendered with respect to the Exchange Club contract and plaintiff's action relates to the contract with the Kiwanis, the ruling is not binding. We *192 disagree. In the first place defendants admitted in their answer that "these contracts were in all significant respects identical". Furthermore, our examination of the contracts satisfies us that they are substantially similar.
Defendants next argue that their activities were not within the purview of the act and that the summary judgment should be affirmed. Again we disagree. When the act was amended in 1977 the following appears in the committee's statement of purpose:
This legislation addresses itself particularly to abuses which have existed in the case of fund-raising campaigns of relatively short duration, such as an individual event, in which professional fund raisers are called in to sell tickets and, in the process, retain a substantial part of the proceeds as their fee. In such cases, little of the money raised eventually goes to the charity for which the event was held. (See statement following N.J.S.A. 45:17A-8)
The expressed legislative intent encompasses the present situation by preventing abuses by defendants and others who are using charitable appeals to sell tickets to a show and receiving or retaining a substantial part of the proceeds.
This act is declared to be remedial in nature for the purpose of protecting the health and welfare of the citizens of the State and should be liberally construed in order to carry out its intent and purpose. N.J.S.A. 45:17A-2.
C.R.S. is entrusted with the administration and enforcement of the act. N.J.A.C. 13:48-1.1. It has determined that defendants are professional fund raisers within the meaning of the act. Giving due deference to this interpretation by C.R.S. and considering the record before us, Peper v. Princeton University Board of Trustees, 77 N.J. 55, 69-70 (1978), we concur in that conclusion. We accordingly reverse the judgment for defendants and remand the matter to the Chancery Division for the granting of relief pursuant to N.J.S.A. 45:17A-14.
Reversed and remanded.