**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5025-14T2
             A-3417-15T2
             A-3670-16T2

IN RE THE PINELANDS
COMMISSION'S CONSISTENCY
DETERMINATIONS APPROVING
TUCKAHOE TURF FARM INC.'S
APPLICATION NO. 1984-0389.009.

_____

Argued May 2, 2018 – Decided July 12, 2018

Before Judges Fuentes, Koblitz and Suter.

On appeal from the Pinelands Commission,
Docket No. 1984-0389.009.

Renee Steinhagen argued the cause for
appellants Pinelands Preservation Alliance
and NJ Conservation Foundation (New Jersey
Appleseed PILC, attorneys; Renee Steinhagen,
on the brief).

Bruce A. Velzy, Deputy Attorney General,
argued the cause for respondent New Jersey
Pinelands Commission (Gurbir S. Grewal,
Attorney General, attorney; Jason W. Rockwell,
Assistant Attorney General, of counsel; Bruce
A. Velzy, on the brief).

William F. Harrison argued the cause for
respondent Tuckahoe Turf Farm, Inc. (Genova
Burns LLC, attorneys; William F. Harrison and

Jennifer Borek, of counsel and on the brief;
Lawrence Bluestone, on the brief).

PER CURIAM

Objectors Pinelands Preservation Alliance and the New Jersey Conservation Foundation appeal from three "No Further Review"[1] letters issued by the Executive Director of the Pinelands Commission (Commission). We consolidated the three appeals and now issue one opinion. The No Further Review letters ended Commission review of development applications submitted by Tuckahoe Turf Farm, Inc. (Tuckahoe) to allow soccer activities across land owned by Tuckahoe in Atlantic and Camden counties. Objectors argue the Commission failed to follow proper procedure and ultimately violated the Pinelands Protection Act (PPA), N.J.S.A. 13:18A-1 to -29, when it failed to hold public hearings prior to ending Commission review of Tuckahoe's development applications. The Commission instead entered into a settlement that objectors argue is not a permitted procedure under the Pinelands' Comprehensive Management Plan (CMP), N.J.A.C. 7:50-1.1 to -10.35, or the PPA. Objectors also argue that although the Legislature amended the PPA in 2016 to include soccer and soccer activities as low intensity recreational uses allowed on the

---

[1] "No Call Up" and "No Further Review" are used interchangeably. We will refer to these communications as "No Further Review" letters.

A-5025-14T2

Agricultural Production Area (APA), the Commission failed to issue a conforming rule amending the CMP, thus making the Commission's final No Further Review letter invalid. We disagree and affirm.

Tuckahoe is a family-owned farm consisting of approximately 710 acres located in the towns of Hammonton (Atlantic County), and Winslow and Waterford Townships (Camden County). All of the property is located in the Pinelands Protection Area, N.J.S.A. 13:18A-3(k), within an area designated by the CMP as an APA. For more than thirty years, Tuckahoe has operated as a sod farm.

All of Tuckahoe's properties in Hammonton and the majority of those in Waterford are subject to deed restrictions granted to the New Jersey Department of Environmental Protection (DEP) under the CMP's Pinelands Development Credit (PDC) program, N.J.A.C. 7:50-5.41 to -5.50. Certain parcels of Tuckahoe's properties in Waterford and Hammonton are also subject to "State of New Jersey Agriculture Retention and Development Program Deeds of Easement" from the State Agriculture Development Committee (SADC).

After the 2008 economic recession, Tuckahoe shifted its sod market from residential and commercial developers to amateur and professional sports leagues. To market its turf grass, Tuckahoe developed "an innovative and unique form of agritourism" by inviting soccer tournaments to take place on the sod farm.

Tuckahoe entered into an agreement with a local soccer club and the Mid-Atlantic Soccer Showcase League Foundation (MSSL) to conduct soccer tournaments and other activities on its properties. The events were held on thirty-five fields:  fifteen percent or less of the total Tuckahoe acreage.  Tuckahoe hosted eight weekend tournaments per season attended by more than 3000 people per day. Tuckahoe rotated field use to minimize wear and tear on the turf and to accommodate the harvesting schedule.  Temporary parking was established directly on the ground in harvested areas where no replanting had yet occurred.  No permanent structures were built.

In 2013, objectors reported to the Commission that Tuckahoe was conducting soccer tournaments on portions of its farm.  The Commission met with Tuckahoe, representatives of MSSL and the local soccer club, and Waterford Township officials in a pre-application conference, N.J.A.C. 7:50-4.2(a).  After the meeting, the Commission issued a letter indicating it did not consider soccer tournaments to be a proper use permitted in the APA, under either the CMP or Tuckahoe's deed restrictions.

Both Atlantic and Camden County Agriculture Development Boards adopted resolutions finding Tuckahoe's use consistent with the Agricultural Management Practices (AMPs) as an on-farm direct marketing activity, N.J.A.C. 2:76-2A.13(b).  Both Boards later

issued resolutions urging the Commission to support Tuckahoe's use of the land for soccer activities.

MSSL, with Tuckahoe's consent, filed an application with the Commission and Hammonton to allow soccer activities on Tuckahoe's 369-acre Hammonton property. Tuckahoe submitted expert testimony that the proposed soccer activities would not involve the placement of any permanent structures, parking would be only in recently harvested areas, and no clearing of vegetation or placement of impermeable surfaces would occur.

The Commission rejected the Atlantic and Camden County Boards' resolutions due to the intensity of the soccer activities occurring on Tuckahoe's property. The Commission issued an Inconsistent Certificate of Filing (COF), N.J.A.C. 7:50-4.2(c), finding MSSL had not demonstrated that the proposed soccer activities were a permitted use in the APA under the CMP or the PDC deed restriction. The COF permitted Tuckahoe to seek approval from the local agencies.

In January 2015, Tuckahoe amended the application for soccer activities substituting Tuckahoe rather than MSSL as the applicant and including its Waterford properties so that Tuckahoe could rotate soccer activities among parcels to better accommodate its agricultural operations and lessen the impact.

In February 2015, the Hammonton Planning Board issued an approval (Hammonton Approval) allowing limited soccer activities, which was sent to the Commission for review, N.J.A.C. 7:50-4.40(a).

After the Commission issued a notice indicating "substantial issues" as to whether the Hammonton Approval was consistent with the CMP, a settlement was reached in May 2015. The Agreement required the Hammonton Approval to be amended to require Tuckahoe to submit in advance its yearly soccer schedule to Hammonton and obtain a zoning permit that could be reviewed annually by the Commission for CMP compliance. The May 26, 2015 No Further Review letter, N.J.A.C. 7:50-4.40(d), is the subject of objectors' first appeal under Docket No. A-5025-14.

Tuckahoe also submitted an application with the Waterford Township Planning Board with respect to the portions of Tuckahoe's property located in Waterford. The Waterford Planning Board issued an approval (Waterford Approval) to allow Tuckahoe to conduct soccer activities on its 310-acre property in Waterford. After the Executive Director exercised her discretion under the CMP and issued a "call-up" letter, on February 1, 2016, Waterford issued an amended approval to Tuckahoe incorporating the same conditions as the amended Hammonton Approval. The ensuing March 10, 2016 No Further Review letter is the subject of objectors' second appeal under Docket No. A-3417-15.

On January 19, 2016, the New Jersey Legislature enacted a bill amending the PPA to expressly recognize soccer and soccer tournaments as low intensity recreational uses. N.J.S.A. 13:18A-8.1. The amended statute took immediate effect. L. 2015, c. 285, § 2, 2015 N.J. Sess. Law Serv. 285 (Assembly No. 3257).

In light of the 2016 legislation, in December 2016, Hammonton's Planning Board modified its 2015 amended Approval of soccer activity on Tuckahoe's Hammonton property, and Waterford's Planning Board modified its March 2016 amended Approval of soccer activity on Tuckahoe's Waterford property. The Executive Director issued a January 2017 "No Further Review" letter concluding that the December 2016 modified approvals issued by Hammonton's and Waterford's Planning Boards were consistent with the CMP and that soccer activities on Tuckahoe's Hammonton and Waterford properties were a permissible land use in an APA. This No Further Review letter is the subject of objectors' third appeal under Docket No. A-3670-16. We consolidated all three appeals.

I.

Review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or not supported by substantial credible evidence in the record as a

whole.'" Id. at 202 (quoting In re. Stallworth, 208 N.J. 182, 194 (2011)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re. Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008)). An agency is owed "some deference to its 'interpretation of statutes and regulations within its implementing and enforcing responsibility.'" McClain v. Bd. of Review, Dep't of Labor, 451 N.J. Super. 461, 467 (App. Div. 2017) (quoting Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008)). The Commission is charged with implementing and enforcing the PPA and the CMP. 16 U.S.C. § 471i(d); N.J.S.A. 13:18A-4 to -9, -27, -29; N.J.A.C. 7:50-8.1. The Commission's legal determinations regarding compliance with the CMP are therefore to be given some deference. McClain, 451 N.J. Super. at 467. "[I]f an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent, no deference is required." Ibid. (alteration in original) (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008)).

## II.

Objectors argue the Executive Director's initial determination that Tuckahoe's proposed soccer activities were

inconsistent with the CMP and deed restrictions was correct and the subsequent approval through an unexplained settlement violated the Commission's duty under the PPA to ensure compliance with the CMP. Objectors contend the modified Hammonton Approval did not cure any of the issues raised by the Commission's initial letter.

The Hammonton property at issue is located within an APA under the CMP. The CMP allows for low intensity recreational uses on an APA, provided that:

> i. The parcel proposed for low intensity recreational use has an area of at least 50 acres;
>
> ii. The recreational use does not involve the use of motorized vehicles except for necessary transportation;
>
> iii. Access to bodies of water is limited to no more than 15 linear feet of frontage per 1,000 feet of water body frontage;
>
> iv. Clearing of vegetation, including ground cover and soil disturbance, does not exceed five percent of the parcel; and
>
> v. No more than one percent of the parcel will be covered with impervious surfaces.
>
> [N.J.A.C. 7:50-5.24(a)(6).]

The CMP defines a low intensive recreational facility as:

> a facility or area which complies with the standards in [N.J.A.C. 7:50-5.24(a)(6)], utilizes and depends on the natural environment of the Pinelands and requires no significant modifications of that environment other than to provide access, and which has an insignificant impact on surrounding uses

> or on the environmental integrity of the area. It permits such low intensity uses as hiking, hunting, trapping, fishing, canoeing, nature study, orienteering, horseback riding, and bicycling.
>
> [N.J.A.C. 7:50-2.11.]

Objectors argue the proposed soccer activity does not utilize or depend on the natural environment of the property, requires significant modification of the property, and significantly impacts the environmental integrity of the property, in violation of N.J.A.C. 7:50-2.11. The Commission argues the proposed soccer activities fall under the low intensive recreational facility definition under N.J.A.C. 7:50-2.11 because athletic fields are not expressly prohibited by the CMP, the soccer fields would depend on the existing natural environment of the property, and no significant modification of the land was allowed. The Commission also contends the proposed soccer activity met the criteria of N.J.A.C. 7:50-5.24(a)(6) because the activity used over 700 acres of land, prohibited motor vehicle use except for emergencies, and did not involve bodies of water, or the clearing of vegetation, or the use of impervious materials.

This issue is moot because the Legislature amended the PPA in January 2016 to include soccer and soccer tournaments as low intensity recreational uses, as long as no permanent structure is constructed. N.J.S.A. 13:18A-8.1 ("Field sports, including . . .

soccer and soccer tournaments, conducted or occurring in an [APA] within the pinelands area, shall constitute a low intensity recreational use under the [CMP] adopted pursuant to the '[PPA],' provided that no permanent structure is established to accommodate the use.").

Objectors argue that public hearings are always required when, as here, the Commission chooses to review an application. Objectors rely on In re. Application of John Madin/Lordland Dev. Int'l for Pinelands Dev. Approval, 201 N.J. Super. 105 (App. Div. 1985), and Noble Oil Co., Inc. v. Dep't of Envtl. Prot., 123 N.J. 474 (1991), for their arguments.

In Madin, we concluded "the PPA itself clearly evinces a legislative intent that hearings be conducted when the Commission reviews a development application." 201 N.J. Super. at 134. We stated, "the quasi-judicial functions of the Commission with respect to land use regulation in the Pinelands area . . . mandates that hearings be conducted." Id. at 134-35. Additionally, N.J.A.C. 7:50-4.41 states:

> If the Executive Director determines that the approval should be reviewed by the Commission, he or she shall, within [forty-five] days following receipt of a completed notice of final determination given pursuant to N.J.A.C. 7:50-4.35(c), conduct a public hearing to be held pursuant to the procedures set out in N.J.A.C. 7:50-4.3.

In Noble Oil, the DEP failed to render findings of fact when it entered a six-month suspension of the license of a company in the business of waste-oil collection and treatment. 123 N.J. at 475-77. Our Supreme Court remanded the matter, explaining that the DEP's discretion "was not unbounded" and needed to be exercised "in a manner that [would] facilitate judicial review." Id. at 476. The Court stated: "Administrative agencies must 'articulate the standards and principles that govern their discretionary decisions in as much detail as possible.'" Ibid. (quoting Van Holten Grp. v. Elizabethtown Water Co., 121 N.J. 48, 67 (1990)).

Both N.J.A.C. 7:50-4.37 and -4.40, however, allow the Executive Director to terminate the review of an application in certain circumstances. If "the applicant submits additional information to demonstrate that the local approval does not raise a substantial issue with respect to" the CMP, or if the local planning board whose "approval has been called up for review modifies its approval so that the approval no longer raises any substantial issues," review may be ended. N.J.A.C. 7:50-4.37(e); N.J.A.C. 7:50-4.40(d). Because the Legislature in January 2016 amended the definition of "low intensity recreational use" to include soccer and soccer tournaments, N.J.S.A. 13:18A-8.1, the Commission issued a new No Further Review letter consistent with the amendment approving Tuckahoe's soccer activities.

Objectors argue the Commission's No Further Review letter violates the language and intent of the PDC deed restrictions. A provision of Tuckahoe's PDC restriction states that Tuckahoe's land located within the APA may only be used for, among other things, "low intensity recreational uses," followed by language that reflects the criteria for allowable low intensity recreational uses pursuant to N.J.A.C. 7:50-2.11 and N.J.A.C. 7:50-5.24(a)(6). The amended statute moots this issue as well.

Objectors argue the Commission is obligated to enforce the SADC easement restrictions on Tuckahoe's properties. Objectors point to the easement as prohibiting the establishment of commercial soccer events within the restricted parcels. The easement states, "the Pinelands Commission has certain rights and obligations in this Deed of Easement pursuant to N.J.S.A. 13:8A-1 et seq. and N.J.A.C. 7:50." Paragraph 1 states: "Any development of the [p]remises for nonagricultural purposes is expressly prohibited." Paragraph 9 states that Tuckahoe "may use the [p]remises to derive income from certain recreational activities," but prohibits the use of "athletic fields."

This issue is not ripe for review because objectors have prematurely appealed the SADC issue. A party may appeal "to the Appellate Division as of right to review final decisions . . . of any state administrative agency or officer . . . except that review

13

. . . shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise." R. 2:2-3(a)(2). The SADC has primary jurisdiction over Right to Farm Act disputes.

"Requiring exhaustion of administrative remedies before seeking judicial relief is a tenet of administrative law and established by court rule." Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 202 (App. Div. 2013). Exhaustion of administrative remedies serves three primary goals: "(1) it ensures that claims are initially heard by the body with expertise in the area; (2) it produces a full factual record facilitating meaningful appellate review; and (3) it conserves judicial resources because the agency decision may satisfy the parties." Id. at 203.

The Atlantic and Camden County Agriculture Development Boards adopted resolutions finding Tuckahoe's use consistent with the AMPs as an on-farm direct marketing activity under N.J.A.C. 2:76-2A.13(b). Objectors failed to administratively appeal the Boards' determinations under the Right to Farm Act. The Right to Farm Act requires a party "aggrieved by the operation of a commercial farm" to "file a complaint with the applicable [county agriculture development board] or the SADC in counties where no county board exists prior to filing any action in court." Borough of Closter

v. Abram Demaree Homestead, Inc., 365 N.J. Super. 338, 348 (App. Div. 2004) (emphasis in original) (quoting N.J.S.A. 4:1C-10.1(a)). Objectors did not file such a complaint and, as acknowledged by objectors, the resolutions by the Boards do not constitute final agency action. This issue is thus not ripe for appellate review.

Although not ripe for review, we note the SADC regulations define on-farm direct marketing activity as:

> an agriculture-related happening made available by a commercial farm that is accessory to, and serves to increase, the direct-market sales of the agricultural output of the commercial farm. Such activities are designed to attract customers to a commercial farm by enhancing the experience of purchasing agricultural products and include, but are not limited to: agriculture-related educational activities; farm-based recreational activities; and ancillary entertainment-based activities.
>
> [N.J.A.C. 2:76-2A.13(b).]

Tuckahoe argues its proposed soccer activity fits squarely within the regulation because the activity is directly related to Tuckahoe's farming operation, which is the production of sod to be sold for use on athletic fields.

The Commission entered into a settlement with Tuckahoe and MSSL to resolve the issues pertaining to the Hammonton Planning Board's approval without a public hearing. Objectors claim the Agreement did not resolve the substantive issues initially raised by the Commission's Inconsistent COF. Objectors rely on Dragon

v. N.J. Dep't of Envtl. Prot., 405 N.J. Super. 478 (App. Div. 2009), to argue the Commission could not use the agreement to avoid substantive requirements under the CMP.

"[U]nder the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, 'unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, or consent order.'" Dragon, 405 N.J. Super. at 491 (quoting N.J.S.A. 52:14B-9(d)). The Dragon court clarified that the decision did not concern DEP's "power to enter into settlement negotiations" but that a settlement cannot be used as a means of circumventing substantive permitting requirements. Id. at 492. Once again, objectors' argument is moot because the Legislature's amendment to the PPA expressly included soccer and soccer activities as low intensity recreational uses permitted on an APA, N.J.S.A. 13:18A—8.1, and because the Commission subsequently issued a new No Further Review letter consistent with the amendment.

Objectors argue that because the amendment to the PPA allowing soccer activity took effect prospectively, it has no retroactive impact on the validity of the Commission's May 2015 No Further Review letter ending review of Hammonton's amended approval of Tuckahoe's application. A court "should apply the law in effect at the time of its decision." Richardson v. Dir., Div. of

<u>Taxation</u>, 14 N.J. Tax 356, 362 (Tax 1994) (citing <u>Phillips v. Curiale</u>, 128 N.J. 608, 615 (1992)).  The "time-of-decision rule" applies "where the statutory law changed between the date of an administrative or judicial decision and the date of an appellate court's decision on direct review."  <u>Ibid.</u> (citing <u>Riggs v. Long Beach</u>, 101 N.J. 515, 521 (1986)).  When prospective or injunctive relief "is sought against future violations of a statute, the time of decision rule is necessary to avoid rendering an advisory opinion on a moot question."  <u>Riggs</u>, 101 N.J. at 521 (quoting <u>Kruvant v. Mayor & Council Twp. of Cedar Grove</u>, 82 N.J. 435, 440 (1980)).  When the Legislature resolves the exact issue in a dispute through legislation, a court should dismiss the appeal as moot.  <u>See</u> <u>City of Camden v. Whitman</u>, 325 N.J. Super. 236, 239, 244 (App. Div. 1999) (explaining that the enactment of the Special Municipal Aid Act rendered the issues presented as moot).

The amendment to the PPA, N.J.S.A. 13:18A-8.1, resolved the primary issue on appeal, namely, whether Tuckahoe's proposed soccer activities complied with the CMP.  Because objectors seek prospective relief rather than money damages, the time-of-decision rule dictates that this court should apply the current law.  Application of N.J.S.A. 13:18A-8.1 renders objectors' first two appeals moot.

IV.

Objectors argue the Legislature contemplated that the Commission would revise the CMP to be consistent with the January 2016 amendment, N.J.S.A. 13:18A-8.1. Additionally, objectors argue that the broad scope of the amendment and its lack of intensity standards necessitates a revision of the CMP by the Commission to ensure consistency with the purposes of the PPA and the Federal Act, pursuant to 16 U.S.C. § 471i(b).

"Administrative agencies are creatures of statute that must comply with the substantive and procedural requirements of any applicable legislation." Christ Hosp. v. Dep't of Health and Sr. Servs., 330 N.J. Super. 55, 64 (App. Div. 2000). Our Supreme Court has stated:

> [I]f an agency determination is one that is expressly authorized by or obviously inferable from the specific language of the enabling statute, in effect calling for only the application of a clear standard to particular facts, it can be expressed through an adjudication and need not take the form of a formal rule or regulation.
>
> [State, Dep't of Envtl. Prot. v. Stavola, 103 N.J. 425, 442 (1986).]

Here, the specific language of the amendment including "soccer and soccer tournaments" as low intensity recreational uses under the CMP expressly allowed the Commission to determine that

the application complied with the CMP without the necessity of a formal rule. Ibid.

Objectors also argue that the amendment constitutes a change in the CMP, which, according to objectors, would require approval of the U.S. Secretary of the Interior under 16 U.S.C. § 471i(g) before it could be effective. The Federal Act does not limit the State Legislature's authority to amend the CMP. Failure to submit a change to the Secretary of the Interior could perhaps expose the State to a risk that the federal government may seek reimbursement of federal funds that the State received for implementing the CMP. 16 U.S.C. § 471i(g)(6). But the federal government cannot require the State "to govern according to [the federal government's] instructions." New Jersey v. United States, 91 F.3d 463, 466 (3d Cir. 1996).

Objectors put forth similar arguments regarding the PDC and SADC deed restrictions on Tuckahoe's Waterford property as they did regarding Tuckahoe's Hammonton property. We conclude the amendment to the statute clarified the issues such that the first two appeals are moot. Exercising appropriate deference to administrative action, we affirm the third appeal.

Appeals Nos. A-5025-14 and A-3417-15 are dismissed as moot. A-3670-16 is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19                                                              A-5025-14T2