193 N.J. Super. 197 (1984)
473 A.2d 90
IN RE CROWLEY.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1984.
Decided January 26, 1984.
*200 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
John J. Crowley, appellant, filed a brief pro se.
Irwin I. Kimmelman, Attorney General, attorney for respondent (Deborah T. Poritz, Deputy Attorney General, of counsel; Mark J. Fleming, Deputy Attorney General, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Appellant, John J. Crowley, a parole officer, appeals from a final determination of the Civil Service Commission (hereinafter called "Commission") issued on November 12, 1982 denying his request to reopen its decision of May 10, 1982 rejecting an appeal which he had filed with the Commission. An understanding of this matter requires a full exposition of the background of this case.
A promotional eligibility list for the position of senior parole officer was promulgated on May 4, 1978 with an expiration date of May 3, 1981. Appellant, a non-veteran, ranked 21st on the list of 83 eligibles. Appellant's name was certified eight times *201 to the position of senior parole officer but he was interested in only two of the eight certifications, those to the Clifton office of the Bureau of Parole, Department of Corrections.
The first certification to Clifton was issued on May 15, 1978. It resulted in the permanent appointment of persons ranking 5th, 16th, 18th and 24th on the promotional eligibility list. Appellant was notified on June 12, 1978 by the Chief of the Bureau of Personnel, Department of Corrections, that he had not been appointed to the position because "[i]ndividuals ranking higher on the certification and provisional incumbents of the position have been appointed and there are no additional vacancies remaining in the location(s) [in] which you have indicated an interest."
The second certification to Clifton was issued on August 9, 1979. It resulted in the permanent appointment of a person ranked 41st on the promotional eligibility list. Appellant received written notification on August 20, 1979 from the Acting Chief of the Bureau of Parole that he had not been appointed to the position. He received no explanation for this action. Appellant was offered senior parole officer appointments in Newark, Rahway, Trenton and Leesburg. He, however, declined these positions based on his interest in the Clifton area.
On August 24, 1979, appellant, as allowed in his union contract, filed a grievance with the Department of Corrections (hereinafter called "Department") alleging discrimination in the bypassing of his name for appointment. In his statement of grievance, appellant alleged that it had been the past practice of the Bureau of Parole to make promotional appointments according to the numerical rank contained on promotional eligibility lists. Since appellant had twice been bypassed by individuals with less experience and a lower numerical rank and inasmuch as his district supervisor had informed him that his work was satisfactory and that there was nothing derogatory against him, appellant alleged that he had been bypassed because he was a union shop steward and former chapter secretary. According to *202 appellant, the only individuals within the top 40 candidates on the promotional eligibility list who had not been appointed to the position of senior parole officer still with the Bureau of Parole were appellant and officers of his union.
A department level grievance hearing was conducted by the Bureau of Parole on December 27, 1979. The Acting Chief of the Bureau of Parole denied that the decision not to appoint appellant as a senior parole officer at Clifton in August 1979 was based on discrimination attributable to appellant's union affiliation. Indeed the acting chief stated that he was unaware of appellant's status as a union secretary and shop steward when he bypassed appellant for promotion.
Furthermore, according to a representative of the Bureau of Parole who appeared at the grievance hearing, the Bureau did not discriminate against appellant. Rather, it utilized its discretion in selecting one of three interested eligibles for each available position. The selection was based on the candidates' experience, ability and performance.
After reviewing the oral testimony and all of the written material presented, the hearing officer issued a written opinion in which he found:
... [T]he grievant presented nothing which would substantiate his claim of discrimination based on his non-appointment to a Senior Parole Officer position. The hearing officer finds that management was within the guidelines of its authority by interviewing all candidates and based upon their assessment, appointing the individual they deemed most qualified for the position. The hearing officer based upon an investigation performed has found that other parole officers within the bureau [of parole] who have been designated union shop stewards within the various districts, have been promoted to Senior Parole Officer positions and as such there is no merit to the grievant's claim of the Bureau of Parole's alleged discrimination based on union affiliation. The hearing officer notes that the grievant has been given promotional opportunities through interviews for Senior Parole Officer positions within the various institutions and district offices which he declined. The hearing officer finds that there is no violation of Article II, NON-DISCRIMINATION as alleged and accordingly, this grievance is denied.
On April 10, 1980, following his receipt of the grievance disposition, appellant wrote to the hearing officer and requested that he consider certain issues which appellant believed had not *203 been satisfactorily addressed in the response to his grievance. Specifically, appellant noted that he had never been advised in writing by the Bureau of Parole as to the reasons for his non-selection to the position of senior parole officer at Clifton. He also noted that the Bureau had failed to cite any exceptions to its past practice of promoting individuals according to their numerical rank on the list of eligibles. In addition, appellant argued that the offer to him of senior parole officer positions at sites other than Clifton demonstrated that he was being discriminated against because of his union activities since the Bureau of Parole only considered him for positions which would remove him from the district office in which he was shop steward. On June 13, 1980, the Department issued a written response to appellant's request wherein it noted that appellant's letter constituted an inappropriate appeal within the grievance process. Thus the Department declined to respond to the questions raised by appellant. The Department further indicated appellant could appeal as provided in his union contract.
Appellant, on April 8, 1980, had already filed another grievance with the Department demanding a comprehensive statement of reasons for not being selected for the position of senior parole officer at Clifton in June 1978 and August 1979. On July 7, 1980, the Chief of the Bureau of Parole responded to appellant's grievance in writing. He noted that appellant had already received written notification at the time he was bypassed in June 1978 that appointments had been made from among individuals having a higher rank than appellant or from persons already serving in the position of senior parole officer as provisional appointees. With regard to the reasons for appellant's not being selected in August 1979, the chief stated:
My decision not to appoint you was based upon an assessment of candidates' demeanor, alacrity of response, caliber of response, and overview of the Bureau's role. Your presentation was adequate as was that of other candidates, to a greater or lesser degree. I made appointments from that group of candidates whose presentation appeared to be the most substantial.
By letter dated August 4, 1980, appellant sought a civil service hearing concerning the promotional procedure utilized by the *204 appointing authority in bypassing him for promotion and the appointing authority's conduct in processing his grievance. Appellant alleged that since he had been passed over for promotion by individuals with less experience and lower numerical ranks, the appointing authority had violated various civil service regulations which provide that appointments and promotions in the civil service should be made only according to merit and fitness. Appellant also alleged that the reasons given to him by the Chief of the Bureau of Parole for his August 1979 non-selection had no relationship to the qualifications necessary to perform the job of a senior parole officer, were not based on an established standard and illegally restricted his ability to represent his district office as its shop steward.
Appellant argued that his failure to be appointed senior parole officer was due to his union affiliation. He maintained that this was evidenced by the alleged systematic exclusion of all persons active in the union and the deviation from the appointing authority's past practice of promoting individuals according to their rank on the list of eligibles. Appellant also argued that discrimination was shown by the appointing authority's willingness to promote appellant to senior parole officer in other areas of the State but not in the district office where he was shop steward.
On November 20, 1980, Christine A. Danilo, Assistant Director of Examinations, issued the first-level administrative decision on appellant's appeal. She found that the appointing authority had used its managerial discretion in selecting one of three interested eligibles for the positions at issue and that appellant had failed to submit any documentation supporting his allegation of discrimination on account of his union activities. Further, he had not submitted any documentation to show a violation of civil service regulations. Thus, she concluded that the appointing authority had operated within the civil service rules in selecting eligibles for permanent appointment from the senior parole officer eligibility list.
*205 On April 20, 1981, appellant filed an appeal from Danilo's decision with Robert J. Hartman, Director of Examinations, Department of Civil Service. The grounds on which his appeal was based were essentially the same as those contained in his original letter to the Commission dated August 4, 1980 requesting a hearing. In addition appellant contested Danilo's statement that he had failed to submit any documentation supporting his allegations of discrimination and violation of civil service regulations.
On May 15, 1981, the Director of Examinations issued a decision denying appellant's appeal for retroactive appointment to the position of senior parole officer. Preliminarily he noted that since the Division of Examinations lacked authority to review complaints of discrimination, that portion of the appeal had been referred to the Division of Administrative Practices and Labor Relations for review. Nevertheless, on the basis of the written record, the director concluded that the appointing authority had legally exercised its managerial prerogative in selecting one of the top three interested eligibles for promotion for both of the certifications to Clifton.
After receiving the director's decision, appellant on June 16, 1981 requested a clarification of the decision, claiming that the director had failed to respond to the issues raised in his appeal. Specifically, appellant requested an explanation as to the relationship between the reasons for bypassing him and the qualifications necessary for a senior parole officer. He also inquired how his non-selection could be found not to have violated civil service regulations requiring that appointments be made on the basis of merit and fitness.
Following appellant's request for clarification, Director Hartman supplemented his decision by letter dated July 6, 1981. The director informed appellant that his request for an explanation of the reasons given for his non-selection could only be provided by the appointing authority.
*206 On June 17, 1981, appellant appealed the director's decision to the Commission. Again he based his appeal on essentially the same grounds as those contained in his original letter to the Commission dated August 4, 1980. Appellant was subsequently notified that his appeal would be decided on the basis of written argument and documentation.
On May 10, 1982, the Commission issued its final administrative determination denying appellant relief on the merits of the appeal. At the outset of its opinion, the Commission incorrectly noted that "John N. Crowley appeals the determination of the Director of Examinations which found that his non-selection for promotion to Senior Parole Officer ... was not based on an improper bypass of his name because of his union activities or affiliations." This was an obvious error since the Director of Examinations had referred this issue to the Division of Administrative Practices and Labor Relations. The Commission stated in pertinent part:
The Commission conclude[s] that N.J.S.A. 11:10-6, commonly referred to as the "Rule of Three", permits an appointing authority to select from any three interested eligibles the one it considers best qualified to fill a vacancy. When the `Rule of Three' is exercised on promotional tests, an appointing authority must submit a statement of the reasons for the appointment and must certify that a bypass, if any, is not based on discriminatory motives. N.J.S.A. 11:10-6.1. In appellant Crowley's case, the appointing authority exercised its right to invoke the "Rule of Three" and appointed on the basis of what it considered to be the superior qualifications of other eligibles. No evidence has been presented to indicate that the invocation of the "Rule of Three" was improperly utilized or was based on anti-union animus. An appointing authority is usually accorded broad discretion in exercising the right of selection under the Rule of Three. Kiss v. Department of Community Affairs, 171 N.J. Super. 193 (App.Div. 1979); see also, Avanzato v. State of New Jersey, et al., A-2829-78 (App.Div. April 17, 1980).
The bypass here in question, was based on the qualifications of other eligibles and appellant has not presented any evidence challenging the fitness of the promoted eligibles. It is also clear that in the context of the proceedings before the appointing authority and at this agency, the reasons for appellant's bypass were fully explored and he was certainly on notice of these factors. Appellant's assertion of an improper bypass will not be sustained on mere allegations. From the facts as presented, appellant has neither established a compelling justification to upset these appointments nor demonstrated that any Civil Service rule has been violated.
*207 Notwithstanding the fact that the May 10, 1982 decision was final, appellant did not appeal from it to this court. Rather, on June 1, 1982, he wrote to the Commission seeking a reopening of its decision. He argued that the issues which he had raised on the administrative appeal had not been considered or addressed by the Commission. Among the issues which he alleged that the Commission had failed to address were his charge of discrimination due to union affiliation and the alleged violations of various civil service regulations. He also noted that although the Director of Examinations had referred the discrimination issue to the Division of Administrative Practices and Labor Relations, appellant had never received any response from that division.
On November 12, 1982, the Commission denied appellant's request for reopening. The Commission noted that a decision will be reopened only "... if new evidence and/or new argument is presented, which if accepted, would change the outcome of the appeal. Before reopening is considered, the requesting party must satisfy the Commission that it was impossible to present these matters during the original appeal." The Commission concluded that:
... in his original appeal, Mr. Crowley alleged that his failure to be appointed as a Senior Parole Officer was based solely on union affiliation. This issue was fully considered and explored by the Commission in its May 4, 1982 decision.[1] Thus, Mr. Crowley's petition for reopening fails to meet the requisite standard for reopening since the arguments and contentions upon which his request is based are a recitation of the proofs and submissions presented during the course of the original appeal.
The Commission further noted that the civil service regulations which appellant alleged had been violated concerned the development and administration of examinations. Accordingly, observed the Commission, they were not germane to arguments concerning the certification and appointment process which takes place only after an examination has been administered. Subsequently appellant filed a notice of appeal to this court *208 from the Commission's November 12, 1982 determination denying a reopening.
Appellant contends that he did not receive a fair hearing before the Civil Service Commission. He argues that he should have been given a full opportunity to demonstrate that his non-selection for the position of senior parole officer at Clifton was based on discrimination due to his union activities.
Initially we note that appellant appeals from the decision of the Commission issued on November 12, 1982 denying his request for a reopening of his administrative appeal. Nevertheless, his brief primarily challenges the Commission's decision of May 10, 1982. Although appellant has technically followed an inappropriate procedure in challenging the May 10, 1982 decision, we are impressed with his conscientious efforts to seek an administrative remedy for the alleged wrong done him. We think the long history of this matter requires that we consider this entire case on the merits, particularly since the Commission in its decision issued May 10, 1982 incorrectly indicated that the Director of Examinations had determined that appellant's non-selection was not based on his union activities. Appellant by his letter of June 1, 1980 gave the Commission an opportunity to correct its error. We conceive no prejudice to the Commission in considering this appeal on the merits. Indeed R. 2:4-3(b) provides that the time to appeal from an administrative agency is stayed by the timely filing and service of a petition for rehearing with the agency. Appellant's letter of June 1, 1982 was deemed timely by the Commission as his application for reopening was denied on the merits. Thus if we declined to entertain this appeal on the merits we would be hypertechnical.
As already noted, appellant's request for a hearing when he filed his appeal to the Commission was not honored. Rather his appeal was decided on the basis of written argument and documentation. It is well settled that a party affected by administrative action who desires a hearing must first demonstrate the existence of a constitutional or statutory right to such *209 hearing. Cunningham v. Dept. of Civil Service, 69 N.J. 13, 19-20 (1975); Public Interest Research Group v. State, 152 N.J. Super. 191, 205 (App.Div. 1977), certif. den. 75 N.J. 538 (1977).
To establish a constitutional right to a hearing, an individual must show that there is a genuine dispute of material fact and that he has a constitutionally protected interest. Cunningham v. Dept. of Civil Service, supra, 69 N.J. at 18-19.
The crucial questions are whether the fact finding involves a certain person or persons whose rights will be directly affected, and whether the subject matter at issue is susceptible to the receipt of evidence.
....
Contested factual issues which may be presented in an evidential manner in proceedings which are targeted at a person satisfy the first prerequisite for a hearing. [Citation omitted.] In such cases adjudicative, as opposed to legislative, facts will usually be at issue. The second prerequisite is that the party affected by the administrative action have a safeguarded interest. Particularized property rights or other special interests must exist. [Citations omitted.] [Id. at 22-24.]
The United States Supreme Court in Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), while allowing the discharge of a nontenured university teacher without a hearing, found:
The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. [408 U.S. at 569-570, 92 S.Ct. at 2704-2705.] [Footnote omitted.]
Holding that the mere expectancy of employment was not an interest of constitutional dimension, the Court reasoned:
The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.
....
... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. [408 U.S. at 576-577, 92 S.Ct. at 2708-2709.]
*210 Appellant has not demonstrated that he has an interest in the position of senior parole officer protected by procedural due process. N.J.S.A. 11:10-6 provides:
The appointing authority shall, in the selection of appointees from an employment list, be entitled to a certification of the names of three eligibles willing to accept appointment for each vacancy ... and may select any one of such eligibles whom he considers best qualified to fill the vacancy in question.
This provision commonly known as the "rule of three" is intended to guarantee the appointing authority an opportunity to exercise minimal discretion in the selection of particular employees. Schroder v. Kiss, 74 N.J. Super. 229, 239 (App.Div. 1962); see Terry v. Mercer Cty. Freeholder Bd., 86 N.J. 141, 149 (1981) (purpose of "rule of three" is to narrow hiring discretion, not to eliminate it). Thus, a person who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment. The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list. Lavitz v. Civil Serv. Comm'n, 94 N.J. Super. 260, 264 (App.Div. 1967); Schroder v. Kiss, supra, 74 N.J. Super. at 240.
Although appellant was ranked number 21 on the eligible roster, he did not have a legitimate claim of entitlement to the position of senior parole officer. Rather, he had an expectancy interest since the appointing authority may select any one of three eligibles which are certified to it by the Commission. Since a mere subjective "expectancy" is not an interest in property protected by procedural due process, Perry v. Sindermann, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), appellant was not entitled to a hearing on constitutional grounds.
Even though appellant had no constitutional right to a plenary hearing, the question remains as to whether he established a statutory right to a hearing. N.J.S.A. 11:10-6.1 provides in pertinent part:
... whenever in making an appointment to any position in the competitive class ... from among those graded highest in an open competitive examination, an *211 appointing officer shall appoint or give employment to any person graded lower in such examination than any other person or persons whom such appointing officer might lawfully have appointed to or given employment in such position, and who was willing to accept such position or employment, such appointing officer shall within 5 days after making such appointment or giving such employment enter upon the records of his office the statement in writing of his reasons for appointing or giving employment to the person so appointed or given employment, and his reasons for failing to appoint or to give employment to the person or persons so graded higher in such examination, and shall, within the same period, transmit a copy of such statement to the commission, certifying under oath that the said statement is a true and complete statement of his reasons for the acts referred to therein, and that such acts were not done by reason of race, color, political faith, creed, national origin, ancestry, marital status, sex or prior criminal record of any person so appointed or given employment, or any person not appointed or given employment....
....
... The Civil Service Commission shall afford any person denied an appointment or employment pursuant to this section an opportunity to submit facts for consideration in a review of the denial. [Emphasis supplied.]
N.J.S.A. 11:10-6.1 does not provide for a plenary hearing as it only provides for the submission of facts. Nevertheless, we conclude that appellant was entitled to a hearing because of his allegation that he was passed over as a result of anti-union discrimination of the appointing authority.
N.J.S.A. 11:5-1 d provides that the Commission shall:
[h]ear appeals, either as a body or through one or more members designated by a majority thereof to hear such appeals, of persons in the classified service sought to be removed, demoted in pay or position, suspended, fined or otherwise discriminated against contrary to the provisions of this subtitle, and render decisions thereon.... [Emphasis supplied.]
Hearings under this section are to be quasi-judicial wherein evidence is to be received and weighed by the trier of facts. See Weaver v. N.J. Dep't of Civil Service, 6 N.J. 553, 556-557 (1951).
N.J.S.A. 11:17-1 provides in pertinent part:
... [N]o person in or seeking admission to the classified service shall be appointed, demoted or removed or be favored or discriminated against on account of any arrest or on account of race, creed, color, national origin, ancestry, marital status, sex or political or religious opinions or affiliations.
*212 Accordingly, one who demonstrates that he may have been discriminated against on the basis of any of the above factors is entitled to a quasi-judicial plenary hearing.
We hold that union activities are encompassed within the category of "political opinions or affiliations." The Legislature does not allow discrimination against an employee for union activities. Such discrimination would clearly violate N.J.S.A. 34:13A-5.4(a)(3), a section of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., which provides that public employees "are prohibited from ... [d]iscriminating in regard to hire or tenure of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by this act." The rights of employees under the act, with exceptions not germane to this opinion, include the right to participate in union activity. N.J.S.A. 34:13A-5.3. Furthermore even the Commission has permitted a plenary hearing in disputes in which a claimant alleges discrimination based on union activity. See Hackensack v. Winner, 82 N.J. 1 (1980), (plenary hearing granted by Commission to civil service firefighters claiming discrimination because of union activities). Finally we note that in New Jersey public employees "... have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." N.J. Const. (1947), Art. 1, par. 19. Thus in view of the showing made by appellant a plenary hearing is necessary to protect his important right not to be discriminated against by reason of union activities in seeking a promotion.
Additional factors further reinforce our conclusion. The Director of Examinations stated that he lacked authority to review appellant's claim of discrimination. Nevertheless he concluded that the appointing authority had legally exercised its managerial prerogative in selecting one of the top three interested eligibles for promotion from both of the certifications to Clifton. This finding was arbitrary since, lacking a review of *213 appellant's claim of discrimination, there was no foundation to support the director's finding that the appointing authority had "legally exercised" the rule of three. See Marranca v. Harbo, 41 N.J. 569, 575-577 (1964).
Although the Director of Examinations referred appellant's claim of discrimination to the Division of Administrative Practices and Labor Relations for review, so far as we can ascertain no action was taken on it. The Commission, however, issued a final determination in which it incorrectly stated that the Director of Examinations found that appellant's non-selection "... was not based on an improper bypass of his name because of his union activities or affiliations." It is apparent that the Commission was confused regarding the director's findings below since the director at no time considered this discrimination claim. Because we are precluded from finding on the record that the decision by the Commission was not arbitrary, unreasonable or capricious, we cannot affirm it. See Flanagan v. Civil Service Dep't, 29 N.J. 1, 9 (1959); Carls v. Civil Service Comm'n of N.J., 17 N.J. 215, 221 (1955). Accordingly a remand for a plenary hearing is appropriate.
Appellant correctly contends that the Commission's findings were inadequate since the Commission essentially disposed of his claim by making the conclusory statement that no evidence had been presented to indicate that the appointing authority's invocation of the rule of three was based on anti-union animus or that those individuals who had been promoted were not qualified. He notes that the Commission failed to make any findings in regard to his contention that other union officials, whom he listed in his written argument, were similarly bypassed for promotion and that this was the first time that the Department had ever bypassed anyone on a promotional eligibility roster in favor of a lower ranking employee.
The Supreme Court has held:
It is axiomatic in this State by this time that an administrative agency acting quasi-judicially must set forth basic findings of fact, supported by the evidence and supporting the ultimate conclusions and final determination, for the salutary *214 purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations. [Citations omitted.] [Application of Howard Savings Institution of Newark, 32 N.J. 29, 52 (1960).]
In reviewing an agency decision to determine whether it is supported by substantial credible evidence and is not arbitrary, unreasonable or capricious, we must have a clear statement from the administrative agency as to the basis for its decision. St. Vincent's Hospital v. Finley, 154 N.J. Super. 24, 29-30 (App.Div. 1977). The requirement of findings is far from a technicality, but is rather a matter of substance. A conclusion requires evidence to support it and findings of appropriate definiteness to express it. N.J. Bell Tel. Co. v. Communication Workers, etc., 5 N.J. 354, 375-377 (1950); U.S. Pipe, etc., Co. v. United Steelworkers of America, 59 N.J. Super. 240, 273-274 (App.Div. 1960). Clearly the Commission's conclusory statement was insufficient to satisfy the requirements that the administrative agency make specific findings.
Appellant argues that when the appointing authority bypassed his name in favor of individuals who were ranked lower than he on the eligible roster, it violated the N.J. Const. (1947), Art. VII, Sec. 1, par. 2, which provides that appointments in the civil service "... shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive...." Accord N.J.A.C. 4:1-8.2. However, the "rule of three," set forth in N.J.S.A. 11:10-6 recognizes employment discretion and seeks to ensure that such discretion is not exercised in a way inconsistent with "merit" considerations. Terry v. Mercer Cty. Freeholder Bd., supra, 86 N.J. at 150. Thus, pursuant to the discretionary rule of three, assuming that the appointing authority had a legitimate reason for bypassing appellant's name, it did not violate the New Jersey Constitution by failing to select appellant for the position of senior parole officer at Clifton.
*215 Appellant also contends that he was not given a fair grievance hearing before the Department of Corrections. Obviously this matter is not properly before this court as this case is an appeal from a ruling of the Commission.
The matter is remanded to the Commission for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. We are not by this decision indicating any opinion on the merits of this controversy.
NOTES
[1] The decision was issued May 10, 1982 but was rendered May 4, 1982.